No. 21,676.

## L. F. SCHUHMACHER, *Appellant*, v. J. C. LEBECK, *Appellee*.

### SYLLABUS BY THE COURT.

1. AGENCY—*To Sell Land—Agent Purchasing for Himself—Specific Performance Refused.* A letter from the owner of land in reply to an inquiry as to his price therefor, stating terms of sale, the person addressed to make his commission from the buyer, does not amount to an offer to sell the land to such person, but merely makes him the owner's agent to find a purchaser on the terms named. And such agent cannot, by reporting that he has sold the land on such terms, compel its conveyance to himself.

2. SAME. An attempt by the agent in such a case to purchase the land for himself, without disclosing to his principal that he is the buyer, is within the rule which forbids a selling agent to buy for himself, notwithstanding he was to receive as a commission whatever price the land brought over a fixed sum.

Appeal from Meade district court; LITTLETON M. DAY, judge. Opinion filed July 6, 1918. Affirmed.

*Frank S. Sullivan,* of Meade, for the appellant.

*H. Llewelyn Jones,* of Meade, for the appellee.

The opinion of the court was delivered by

MASON, J.: L. F. Schuhmacher sued J. C. Lebeck, asking the specific performance of a contract which he alleged existed for the sale to him by the defendant of a quarter section of land. A demurrer to his petition was sustained, and he appeals.

The facts as set out in the pleadings were: The plaintiff wrote to the defendant inquiring the lowest cash price for which he would sell the land. An answer was received saying:

"You know all about my land locations and all so $2,500.00 $1,000.00 down & the rest $1,500.00 at 6 percent for 5 years if the party wants it that way you make your commission from the buyer. I have listed my place with other real estate men all with the same terms. Cash in hand for $2,000.00."

A few weeks later the plaintiff sent the defendant a telegram reading:

"Have sold your quarter for $2,000.00 cash net to you. Letter will follow."

Schuhmacher v. Lebeck.

Two days later he received a letter from the defendant written five days before, directing him to take the land off his list, as it was priced too low. The plaintiff made a demand for the conveyance of the land, which was refused.

1. The first letter of the plaintiff was not an offer to sell the land to the defendant for $2,000. It merely amounted to a "listing" of the land with the plaintiff as a real-estate agent; that is, it made the plaintiff the agent of the defendant for the purpose of finding a purchaser ready, willing, and able to buy the land for the price and on the terms stated. This is manifest from the language used; and that the plaintiff so understood it is evident from the fact that his telegram did not purport to be an acceptance on his part of an offer made to him, but a report of the negotiation of a sale to some one else.

The plaintiff contends that the letter amounted to an offer to the public at large, which would result in a contract whenever any one accepted it. We do not regard it as open to this interpretation. The plaintiff was given no authority to bind the defendant to sell the land to any one. If he had produced a buyer, say at $2,100 cash, the defendant could doubtless have been required to pay him a commission of $100 (*Culbertson v. Sheridan,* 93 Kan. 268, 144 Pac. 268), but could not have been compelled to part with the property. (*Brown v. Gilpin,* 75 Kan. 773, 90 Pac. 267; 17 L. R. A., n. s., 210.) As the plaintiff could not by any act of his commit the defendant to a sale to some one else, he could not, by representing that he had attempted to do so, create a condition under which he could compel a conveyance to himself.

2. The plaintiff concedes the general rule to be that an agent to sell cannot buy for himself (20 L. R. A., n. s., 1158; 9 C. J. 538, 539) ; but he argues that the purpose of the rule is to protect the vendor from imposition, and, inasmuch as here the defendant was interested only in receiving the amount he had named, no such imposition was possible, and the rule does not apply. He cites *Johnson v. Furnish,* 29 Kan. 523, as sustaining this theory. That case merely holds, however, that it is no imposition upon a vendor who has become obligated to sell land to one person to be asked to execute the deed to a grantee designated by the buyer instead of to the buyer himself.

It may be doubted whether in the present case the defend-

ant's letter resulted in the employment of the plaintiff to find a purchaser of the property at any sum over $2,000 in cash, he to have the excess as his commission. The proper interpretation may be that the selling price contemplated was $2,000 and enough more to constitute a reasonable or customary commission. But, assuming that his commission was measured by the excess, whatever it might be, we hold that he could base no claim upon a sale attempted to be made to himself without advising the defendant that he was the purchaser. A sale made by an agent to himself is invalid, notwithstanding there may have been no actual fraud or unfairness on his part and no injury to the purchaser. (2 Enc. L. & P. 1062, 1063; 9 C. J. 539; Note, 80 Am. St. Rep. 560-562.) Inasmuch as the defendant had a legal right to accept or reject any buyer produced by the plaintiff (being absolutely liable however for the commission), he was entitled to know all the facts concerning the transaction, including the price, before deciding upon his course in that regard, and a representation by the agent that the sale was to be made to a third person, when in fact he himself was the buyer, was capable of misleading the principal to his prejudice.

The following text may seem open to a construction militating against this view:

"The mere fact that a broker is authorized to purchase or sell a particular piece of property at a specified price, does not work an exception to the rule, for even under such circumstances a broker is expected to make an honest endeavor to obtain the most advantageous terms possible for his employer. A distinction is drawn, however, between such a case and an employment by which the broker is to receive as his compensation all that he can secure above a fixed price net to the vendor, there being nothing in an agency of the latter character to cause the broker to refrain from himself purchasing at the price set by his employer and subsequently selling at an advance to a third person, for by the terms of his employment he would be entitled to such advance even if the sale had been made direct." (4 R. C. L. 277.)

In the case upon which the second sentence of this quotation is based (*Merriam v. Johnson*, 86 Minn. 61), the owner of a tract of land sued his agent, to whom he had made a net price, for the profit he had obtained by buying it himself and at once reselling it. A verdict was directed for the plaintiff. The ruling was reversed on the ground that "the trial court should have submitted the question of fact to the jury whether the

contract was as appellant claimed, namely, that he should have the privilege of selling the land at any price above $10 per acre, in any way he chose, even to himself." (p. 65.) The supreme court added:

"In view of a new trial, we have referred to the correspondence in detail, since it is upon that appellant relies, and we unhesitatingly hold that, if those letters constituted the only communication between the parties hereto, they conclusively prove that appellant employed respondent to sell the land for him at the best price obtainable by him, with his experience and ability as a real-estate agent; that his compensation for such services was to be a reasonable commission to be paid by the purchaser; that appellant deeded his property to Cousins upon the supposition that he was the purchaser in fact, not knowing that respondent was buying the land himself, and even before so doing had sold it at an advance of $6 an acre." (p. 66.)

The first headnote in the official report of the case reads:

"A real estate agent, who induces the owner to fix a net price upon certain property, upon the supposition that a sale is to be made to a third party, cannot himself purchase the property and by such transaction, in any event, realize a greater profit than a reasonable commission in addition to the net price." (syl. ¶ 1.)

The following cases, while not passing directly upon the exact question now under consideration, tend to support the decision we have announced. (*O'Meara v. Lawrence,* 159 Iowa, 448; *Payne v. Beard,* 247 Fed. 247; *Foss Investment Co. v. Ater,* 49 Wash. 446.)

The judgment is affirmed.